BREAUX, C. J.
Plaintiff appealed from a judgment rendered in favor of the sheriff for costs.
In the suit in which these costs were incurred, in matter of a conservatory writ issued on application of the plaintiff, oil was seized in accordance with the writ.
In time, after this oil had been seized under said writ, defendant obtained its release on bond, accepted in accordance with the court’s order.
Thereafter plaintiff sought to obtain a writ of sequestration from the court, which was issued.
The sheriff under said writ seized portions of the oil produced by three wells on the land claimed by plaintiff.
Some time after the sheriff, wishing to collect costs, filed a rule on both plaintiff and defendant, setting forth that he, as sheriff, had sequestrated and taken into his control in said sequestration oil produced by wells named in the rule.
These wells had names, it seems, and the names of the three wells are given in the rule.
The sheriff alleged in this rule that he was compelled to employ keepers and gaugers and a bookkeeper at an expense of about $200 per month; that the duties required him to perform the functions of a receiver, and for that reason he claims that an amount sufficient should be allowed him to pay the gaugers or keepers, the bookkeeper, and the attorney at law who gave him advice.
He asked to have the whole amount fixed.
The defense is that the plaintiff in rule has no right to the amount he claims, as there was no need for the employment of a special bookkeeper for the work, and that there was equally no good reason for employing gaugers and keepers; that the services of the sheriff are not to be likened to those of a receiver. Defendant, it follows, also' denied that plaintiff in rule had a right to any costs, including those of the attorney.
The district court allowed $100 per month as the salary of each keeper and gauger, and $25 per month for the bookkeeper.
The amount of the sheriff’s costs for services such as allowed to a receiver and for fee of attorney were rejected and dismissed.
Appellee joined in the appeal, and asked that the judgment be amended by allowing the claims which the district court rejected; that is, the fee claimed to pay the attorney *246 ■and the amount claimed by the sheriff as due him as a quasi receiver.
Defendant’s contention is that the sheriff ■can recover only expenses incurred in keeping the oil.
This is sought to be met by the sheriff (plaintiff in rule) by urging that the expenses incurred were reasonable and legal.
We take up first for decision the claim, to wit, cost of attorney for legal advice.
It has never been decided by this court that the sheriff is entitled to an amount to pay his attorney for legal advice. The sheriff is an ■officer of the court, is in touch with the court and its other officers, and has never been considered as an officer in need of regular professional advice, to be charged in the suit in executing the process of the court. The parties to the suit should not be held liable for such fees.
As an executive officer of the court, the sheriff is amply protected by its order if properly executed. This can be done without specially retained attorney at the expense of the parties to the suit.
Now as to the claim as a quasi receiver:
The sheriff was neither a quasi receiver nor a receiver. He represented no insolvency, or a ■corporation requiring the services of a receiver, in so far as the testimony discloses.
We in the next place take up an amount of $75, in regard to which appellee in his brief states that there is no contention; that no point is made of it.
This claim is alleged by the plaintiff in rule taken in this case for his costs. On the trial -of this rule it was referred to in passing. The judge of the district court does not mention it at all, nor does the motion filed by the appellee to amend the judgment state anything about it.
If there is no dispute in regard to this claim, it remains that the parties should settle it. At any rate, we do not think that we should pass upon it. We are only concerned with the $225 per month, which the judge of the district court decided should be paid each month.
The costs claimed were incurred under the writ of sequestration, which was executed by the sheriff on the 5th day of September, 1907, by taking into his possession one-fourth of all oil royalties produced by the wells producing oil sequestered.
Plaintiff, Crusel, in the original suit, alleged in his petition for a sequestration (for there was both an attachment first and a sequestration afterward) that defendant was about to make use of his possession of the property to dilapidate and waste the fruits and revenues and prevent the development of the property; that it would be better administered in the hands of the sheriff.
It was in accordance with the allegations' contained in this petition that the sheriff went into possession and appointed keepers and watchers.
This was done, although the defendant obtained an order fixing the amount of a bond, of which he availed himself, executed the bond and obtained an order of release on the bond.
On account of the disagreement between the parties and the nature of the issues, the sheriff remained in possession of the well to the extent needful to receive the oil, gauge the quantity, and place it in the possession of the defendant as authorized under his bond.
We will state here that the property was sequestered and seized in September, and in the following October the parties, plaintiff and defendant, entered into an agreement in accordance with which a judicial sequestrator was appointed, and the sheriff, from the date of his appointment in October, was relieved from further responsibility as relates to receiving and accounting for the oil. All of that duty then devolved upon the judicial sequestrator.
*248 The contention of the sheriff, plaintiff in rule, is, in substance, that in order to be able to properly account for the property sequestered he had to employ watchers and keepers and a bookkeeper; that this began at the date of the sequestration and seizure, and continued to the date of the judicial sequestration.
I-Ie stated as a witness in his own behalf that the gaugers must have knowledge of the business — understand how to gauge and measure the oil carefully; that it was all day and all night work. There was always a watcher on hand.
It seems that the productions of the different wells were divided into different portions, going to the respective owners. The whole work is out of the ordinary, but requires no special skill. It is only necessary to be reasonably accurate in performing the duties of keeper or watcher.
In this instance the gauger had to take into consideration the entire quantity of oil produced by each well in order to arrive at the amount seized.
The oil is received into the tanks as it flows from the well. As it is received it is gauged, the quantity is put down and divided, and the proportion of each is established. The work is greatly facilitated by other gaugers representing other owners, who are also interested in correct gauging. In comparing notes, the correct amount is quickly arrived at.
The sheriff, representing a portion of the wells, decided it best to take no chances, and for that reason employed his own gaugers.
The services were of a character to entitle him to compensation.
Act No. 203, p. 485, of 1898, contemplates that the sheriff shall receive compensation for keeping personal property held by him under seizure.
In this case they were necessary expenses, and fall within the provision of the statute. There were actual services performed. In our opinion the decisions of this court sustain the claim to the amount allowed by us.
Similar services were ordered paid in the-case of Learned v. Walton, 42 La. Ann. 455, 7 South. 723; also in Lockhart v. Morey, 41 La. Ann. 1165, 4 South. 581.
In another case the sheriff was allowed a. special amount for keeping cattle. Jure v. Ballatin, 8 La. Ann. 18.
In another case it was said, when services-are eminently necessary, they should be paid. Witkouski v. Witkouski, 16 La. Ann. 233.
Now as to the amount which should be allowed:
Plaintiff in rule alleged that he had been compelled to employ keepers at an expense-aggregating the sum of about $200.
The testimony shows that the average man for such work is paid as low as $90 per month and over $100.
In our opinion, in this instance, the minimum is a fair price for services rendered, and $20 for the bookkeeper brings the amount to the $200 before stated. It must be borne-in mind that the property yielded only from $1,200 to $1,500 per month.
It must also be borne in mind that the-bookkeeper is employed by several companies,, and that the services he rendered added very little to the duties which he is called upon to-render. He keeps the books of other owners, and of the products of the well furnishes duplicates.
Here he furnished duplicates to the sheriff' and gave him some assistance. He was not a regularly employed bookkeeper, rendering services specially to the sheriff. A regular bookkeeper is too important to work for such a salary, but when in connection with his bookkeeping it adds only slightly to his work, and the amount here allowed is adequate.
Eor reasons stated, it is ordered, adjudged,. *250 and. decreed that the judgment appealed from is amended, by reducing the amount from $225 to $200 per month, and, as amended, the judgment is affirmed. Appellee to pay costs.